This time we'll hear DeLee v. Hannigan. Got it. Good morning, Your Honors. May it please the Court. My name is Jerry Walsh. I'm here for Maurice DeLee. I first want to focus on the jury instruction point at trial in Crawford v. Cuomo. It's our position that had the jury been charged properly under Crawford v. Cuomo, that the touching of Mr. DeLee's, or the grabbing of Mr. DeLee's testicles by the corrections officer, if believed by the jury, would be enough for an Eighth Amendment violation based on Crawford. And I think as you sort of read the decisions, I think until we got to the trial with the trial judge, I think you sort of saw that element in the decisions from Judge Fascio going up, that there was this idea of this sexual abuse or whatever. Yeah, but where's the evidence? I mean, you may have issue as to touching, but where's the evidence that this was done either to humiliate him or for the sexual gratification of the toucher? Your Honor, this is not just a pat, frisk, touch. This is an allegation, if believed, that got to trial, that he made that allegation, that he was grabbed from behind while he was being made to swear off on this $70 restitution off. If it's not made to humiliate him, what else is it? And so I think Cuomo, Crawford v. Cuomo . . . Well, the issue is whether there was a penological purpose to . . . I can't think of one, Judge. . . . to handling him. Can you? I can't think of one. Because that's what I think Crawford v. Cuomo added, the humiliation factor. Because if you get into what is the sexual gratification of the person . . . You'd never prove that. You'd never be able to prove that. So I think that got left out. And I think if the jury is given that instruction, then it could have made a difference. And here the jury had one question, give us the excessive force charge again. And the excessive force charge, that was the second argument I made on the jury instruction, was unduly confusing because there was . . . I think proximate cause was mentioned four times in the charge. I took the position that you shouldn't even be charging proximate cause under the Hudson and the Wilkins cases because the significant injury is not an element of the cause of action, it goes to damages. And the court disagreed with me and refused to do that. So I think the combination of those two instructions would have made a difference in this case if the Crawford v. Cuomo charge had been made. Now, I did note last night, I saw that there was another decision in the Crawford case by a panel here on January 25th. It involved an immunity issue. Can I ask you a question, though, going back to the instruction, though? Wouldn't the instruction, though, that was given about excessive force essentially cover the instruction that you say should have been given about the actual sexual abuse? In other words, there was language in the instruction that was given that if the jury found that the force used was malicious or sadistic, which seems to me to equate to being intended to be humiliating, the jury essentially had what they needed to find that the touching of his testicles was excessive under the definition they had to work with. Your Honor, I think the distinction that Crawford v. Cuomo drew is when you're dealing with touching or grabbing someone's private parts, and there's a distinction. And that's the argument that the Attorney General makes is, well, they would have certainly found it. But that's sort of hindsight. If the jury had been charged . . . Look, if you find . . . You're invoking hindsight as well, obviously. Well, of course, but if the jury had been charged to say, I have to because I have to try to show it would have made a difference. If the jury was charged . . . Look, if you find that he was grabbing his testicles in a way that was designed to humiliate him, forget the sexual gratification, that's excessive force. You don't have to go through this whole other machination. Well, what I'm suggesting to you is that the instruction you wanted, in theory, was a subset of the instruction they got. So they, as the State argues, they could have, the jury could have, with the instruction they got, found that excessive force was used if they had found his testicles were grabbed, given the instruction they had. In other words, the failure to give it was harmless at best. Respectfully, Your Honor, I disagree with that. I think it would have made a significant difference had they been given a charge saying, if you believe this testimony, then that is an Eighth Amendment excessive force, without all the other considerations on the three or four pages that go into the other analysis for excessive . . . That's, to me, the key difference there. The other part of the case, the main part of the case, is there are two stories to tell here. One was what happened in that room between Sergeant Hannigan and Mr. DeLee, and Mr. DeLee says there are other people there, and then what happened leading up to that, and then what happened after it. By the time we got to trial, we did have a conspiracy charge against the remaining defendants, but it was on vapors at that point. During the pretrial conference, Judge Geraci said, I think this is just an Eighth Amendment case, and never charged the jury on it. I think that was error as well in the jury instruction. But really, the case had been wheedled down. Not to say that all these defendants should have been going to trial. You've seen many more of these cases than I have. There are probably way too many defendants. But there was, we believe, sufficient evidence at the summary judgment stage to take into consideration the second part of the case. I tried to keep it in the trial, but there was nothing for the jury to hang it on at the trial, at the end of the day, because . . . How can we decide that issue, though? You haven't provided any of that evidence to this court to review. Yes, I have. You gave us a copy of the docket sheet, but there's nothing in the appendix. Under the rules, because it's a prisoner case, I don't have to do that. I prefer to do it, but my partners probably think I've spent way too much time on this case to begin with, but I'm sticking with it as far as I can. What I'm trying to get to is that in the summary judgment stage, the part that falls out at the trial is what happened to him afterwards. Let's not lose the big picture. This was instigated by Sgt. Hannigan over the $70 refund that this man had already gotten, but for Sgt. Hannigan saying, I'm going to go rouse this guy out of his cell and do whatever I'm going to do, this never would have happened. I think there was significant argument to say this guy really wasn't hurt. I think that's what the defense was trying to do, but the other part of it, the fact that he was in the box for three and a half months, that really never got to the trial. Thank you. May it please the Court, Frederick Brody for all defendants except Sgt. Hannigan, who's submitting and has his own counsel. Let me start with Crawford. Dlee did not testify that White or Carhart, my clients, touched his genitals. Only Hannigan. Unless the Court disagrees and thinks there is some Crawford issue as to White or Carhart, I'll go directly to proximate cause. Hearing no objection, let me deal with the jury instructions on proximate cause. Jury instructions must be read as a whole. Read in context, the district court's instructions on injury were absolutely correct. The court stated, quote, a use of force can violate the Eighth Amendment even if it does not cause significant injury. The court explained, quote, the mere fact that a constitutional deprivation occurred is an injury to the person entitled to enjoy that right, even when no actual damages flow from the deprivation. And the court therefore instructed, quote, if you find that the plaintiff has suffered no injury, no injury as a result of the defendant's conduct other than the fact of a constitutional deprivation, then you must award nominal damages not to exceed $1. Must award. So the jury here did not even award nominal damages. So they cannot have found a constitutional violation. Hudson and Wilkins, the cases cited by plaintiff, held that injury need not be significant, but an injury must exist. And the court here properly instructed the injury does not need to be significant. Even the mere fact of a violation is enough. Let me talk about conspiracy now, both on the level of summary judgment and then on the level of trial. On the conspiracy claim, defendants did not seek, and the court did not grant summary judgment. The amended complaint pleaded a conspiracy claim only against Hannigan, White, and Carhartt. That's at ECF number 51, paragraph 58. So there's no basis for the argument in DeLee's reply brief that Conway, Pollock, Dixon, Brown, and Lambert were liable for conspiracy. There was no claim against them. So now we get to trial. At trial, there was no proof of an illegal agreement among Hannigan, White, and Carhartt. Neither White nor Carhartt had previously worked with Hannigan. When White saw DeLee being taken to A Block, White contacted Hannigan's superior, Lieutenant Gilmour, because what he saw was against procedure. White told Gilmour that he thought there had been a use of force because Hannigan had told him that. He then said that Gilmour wasn't getting the whole story from Hannigan. Hannigan was ultimately suspended for 45 days for not immediately reporting the use of force, and all that came out at trial. That's the opposite of a conspiracy. White turned Hannigan in to his superior. With respect to retaliation, on summary judgment, we dealt with plaintiffs' allegations defendant by defendant and showed that there was no triable issue of fact. An inmate's bare assertion that an officer retaliated against him is not sufficient to overcome a showing, for example, that the officer had no personal involvement in the conduct complained of. And we made that showing for numerous defendants. With respect to Officer White's misbehavior report specifically, and this is what counsel, I believe, is alluding to when counsel says what happened afterward. Officer White did a misbehavior report. No reasonable jury could find that Officer White's misbehavior report was retaliatory. Consider the mise en scene. De Lee claimed he returned a package of commissary goods but didn't receive credit for it. So what happened to the package? Lieutenant Lambert, who sued here even though all he did was tell Hannigan to investigate, told Hannigan to investigate. So Hannigan looks. The commissary doesn't have the goods. The goods are not in the cell of the inmate who ran them from De Lee, allegedly ran them from De Lee's cell back to the commissary. So then they look at the cell De Lee had occupied at the time before being moved and the goods aren't there either. After all those places were searched, Hannigan directs White to search De Lee's cell. Again, White and Hannigan had not worked together before. White searches the cell. He finds at least two of the missing items, a plexiglass mirror and a pair of Koss headphones. Those items were available only during the commissary buy at issue. Can I ask you a question about the due process claims that were dismissed either at the motion to dismiss phase and again at the summary judgment phase against Conway, Pollack and Dixon? Was there any evidence at the summary judgment phase to raise a disputed issue about whether those three either supervisory officials or the ones doing the investigation had reason to suspect that Hannigan was lying or that there was some reason to suspect that something was wrong with how the process had worked? Well, as far as Conway goes, Conway, he's the superintendent. Right. He was dismissed at the motion to dismiss phase. I realize that. Well, no, no. But then again, inexplicably, the issue is considered again at summary judgment. But what Conway says on summary judgment is that he did not, he could have been, there was a procedure under which he could have been asked to review the disciplinary convictions. And he was not asked to review that. Instead, they go directly to Director Bozzio at central office. They, meaning DeLee himself, didn't ask for a review. Correct. Correct. So Conway, and it's in his affidavit on summary judgment, he says I believe twice that I did not review these. So as far as the disciplinary proceedings go, there is no direct involvement by Conway. Now, Conway, by the way, does refer, you know, when Gilmore reports to Conway and he says there's a problem with this use of force, Conway refers the case to the inspector general. So you ask, was Conway deliberately indifferent, as suggested by plaintiff? No. Was there a disputed issue of fact as to that? Well, I mean, Conway wasn't part of the disciplinary proceedings. So whatever his knowledge or belief was about Hannigan didn't play a part in those proceedings. But Conway, of course, did the right thing. He says there's a problem, I'm going to refer it out. What about Pollack and Dixon? Pollack and Dixon. Those are the hearing officers. And on summary judgment, the hearing officers both testified via affidavit that they did not know DeLee and they did not know anything about the incident prior to the hearing. And they did not prejudge DeLee's guilt. So there's no evidence that either officer had a retaliatory motive, nor can one reasonably be inferred. They did not know that the other officer suspected that Hannigan wasn't being truthful by not reporting or the one who triggered the review? Did they know any of that? The record does not reflect that they knew that. DeLee's basic complaint about the disciplinary hearings was that they denied him due process, but we responded to that at length in our brief. And Franco v. Kelly, a case cited in DeLee's reply brief on this point, held that even if the due process standard is met, retaliation can be actionable if it violates an inmate's rights under the First or Eighth Amendment. Well, the Eighth Amendment claims against Hannigan, White, and Carhart went to trial, and we have a defendant's verdict, which, as shown in our brief, is eminently supportable. As to the First Amendment, again, I don't want to go through each defendant here, but we showed on summary judgment that each defendant's conduct was not actionable. And, you know, with respect to due process specifically, the Federal standard governs here. State due process standards, you know, you'll find in the Third Department stricter decisions, but Mr. DeLee sues in Federal court. Federal standard applies. So you need advance written notice, which they both had, an opportunity to call witnesses, which they had. And it's true, Pollack and Dixon denied some witnesses, like they denied Conway because they said he would be — he wasn't there at the time. He would be redundant. They're focusing on the facts that occurred at the time. And there was a written decision, and there was some evidence to support the findings. Now, focus on Pollack for a moment. The Hannigan problem doesn't exist with Pollack's decision, because first thing Pollack says in his decision is that it's based on the testimony of Officer White. And Officer White testified that he found these goods and that there was gang graffiti, and he testifies that based on his own observation. So that's independent evidence. And all you need is some evidence, some reliable evidence to support it. Dixon, same thing with opportunity to call witnesses, advance written notice. As to Dixon, DeLee wanted two inmate witnesses. One of them testified. He said he didn't know anything about the incident. The other refused to testify and signed a form, which is in the record. There was a written decision, and there was some evidence. And, yes, that evidence was Hannigan's testimony. But unlike cases like Syrah v. Morton, where they had hearsay evidence from a confidential informant, here Dixon was able to look Hannigan in the eye and ask him questions. So there was no need for an independent assessment of Hannigan's reliability. That assessment was part and parcel of Lieutenant Dixon's decision making at the hearing. Unless there are further questions, we'll rest on the brief. Thank you. We'll hear rebuttals. Thank you. Your Honor, I want to address that last part, those questions you asked. The last thing that Mr. Brody said is not true. Dixon did not get a chance to look Hannigan in the eye because he testified by telephone. He had been suspended by that time. So they knew he was suspended, and the superintendent, Conway, just as Mr. Brody said, had started the disciplinary process for Hannigan. Why did he do that? Because he got Exhibit 44 at the trial. Lieutenant Gilmore, he was the watch commander on the night in question, his report saying he didn't believe him. And that went to Deputy Superintendent Chappius, who takes care of these things for the superintendent, but the superintendent had to sign off. He knew that he was sending documentation to have this investigated. And two days later, the inspector general's office was there, Mr. Stroh. He was one of the witnesses that Mr. DeLee wanted to call during these hearings, Mr. Stroh, who had come in to investigate this, and he was denied that. I think what happens is, oh, you just want to call the superintendent, you're a wise guy. He wanted to call the superintendent because the superintendent had knowledge about the fact that Hannigan, at least some of his superiors, thought he was lying. So that's why that was critical. You also, I think, asked a question about whether DeLee had asked for a review. He did ask for a review, and it's in the record that he did ask for a review. So those are the disputed issues of fact and summary judgment on those due process claims. I have nothing further, Judge, although I must tell you we're talking about the Seventh Circuit today. There's a case from the Seventh Circuit that was decided last year, Dornbost, D-O-O-R-N-B-O-S versus City of Chicago, 868 Fed 3rd 572. The only reason I know about that case is because my friend handled that case, and we were crying in our beer one day, and he had a jury instruction issue, lost a trial, and the Seventh Circuit reversed. It was a frisk issue, different than this, but it was a frisk issue about whether or not . . . It had similarities to it, but when I talked to him, I said, well, I've got a jury instruction issue, I've got no chance. And he said, well, I just won, so I hope I have a chance. Thank you. Thank you. Thank you both. The reserve decision . . .